Morgan C. Fiander
POLSINELLI PC
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 413-2838
mfiander@polsinelli.com

Bradley R. Gardner
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 853-1000
bgardner@polsinelli.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61,<br><br>Plaintiff,<br><br>v.<br><br>1229 60 Street LLC, Lot 59 Street LLC, Nathan Rosenberg, Sarah Lebovits, and John Doe No. I through John Doe No. XXX, inclusive, the last thirty names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint,<br><br>Defendants. | Case No. _____ |

**COMPLAINT FOR MORTGAGE FORECLOSURE**

Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 ("**Plaintiff**"), by and through its undersigned counsel, brings forth its cause of action against Defendants 1229 60 Street LLC ("**60 Street**") and Lot 59 Street LLC ("**59 Street**" and together with 60 Street, collectively, "**Borrowers**"), Nathan Rosenberg and Sarah Lebovits (collectively, "**Guarantors**"), and John Doe No. I through John Doe No. XXX, and states as follows.

**PARTIES**

1. Wilmington Trust, National Association ("**Wilmington**") is a national banking association organized under the laws of the United States of America. Wilmington serves as the trustee for the holders of the Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 (the "**Trust**"). The Trust is treated as a real estate mortgage investment conduit under the Internal Revenue Code of 1986. With respect to the loan transaction that is the subject matter of this action, KeyBank National Association ("**KeyBank**") acts as the Special Servicer and authorized agent for Plaintiff.

2. 60 Street is a limited liability company organized and existing under the laws of the State of Nevada.

3. 59 Street is a limited liability company organized and existing under the laws of the State of Nevada.

4. Each Guarantor is an individual and citizen of the State of New York.

5.      Defendants John Does I through XXX are currently unknown to Plaintiff, but, upon information and belief, are tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises to be foreclosed in this Complaint.

## JURISDICTION AND VENUE

6.      This is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

*7.*      In *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) and *Americold Realty Tr. V. Conagra Foods, Inc.*, 577 U.S. 378 (2016), the United States Supreme Court confirmed a long-standing rule of jurisprudence than an express, "traditional" trust is not a juridical person—it is a fiduciary relationship—and, therefore, for purposes of diversity jurisdiction, only the citizenship of the trustee is considered. Courts sitting in the Second Circuit have adhered to the principles set forth in *Navarro* and *Americold* and held that the citizenship of the trustee of a traditional trust litigating in its own right, controls for the purposes of diversity jurisdiction. *See, e.g.*, *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("because the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships . . . it is the trustees' citizenship that must determine diversity"); *RL 900 Park, LLC v. Ender*, No. 1:18-cv-12121 Slip Copy 2021 WL 738705, \*6 (S.D.N.Y. 2021) ("in the case of trusts, the trust's citizenship is determined by the citizenship of the Trustee"); *Vilayvanh v. East 111th Street Properties, LLC*, No. 20-CV-7226 Slip Copy 2020 WL 6364871 (S.D.N.Y. 2020) ("the citizenship of a traditional trust is ascertained by looking to the citizenship of the trustees").

8.      Plaintiff is a traditional trust, and its trustee, Wilmington, is the real party in interest. Plaintiff's trustee, Wilmington, brings this action in its own name and in its capacity as trustee.

Wilmington is the owner of a pool of mortgage loans, which includes the loan that is the subject of this lawsuit, and holds these assets in trust for the benefit of the registered holders of "Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61." This trust relationship was organized as a common law trust under the laws of the State of New York and is governed by a Pooling and Servicing Agreement dated as of July 1, 2018 (the "**PSA**"). The New York Civil Practice Law and Rules provides that a trustee of an express trust may sue in its own name. *See* N.Y. CPLR § 1004. Under the PSA, Wilmington holds trust assets for the exclusive benefit of the certificateholders. It is Wilmington, acting through its loan servicer, KeyBank National Association, who has dominion over the loans and the right and authority to defend lawsuits and file lawsuits with respect to trust assets. The beneficiaries of the trust (i.e., the certificateholders) have no such authority, nor do the beneficiaries of the trust have any ownership interest in the trust's property.

9. For purposes of diversity jurisdiction, Plaintiff has the citizenship of its trustee. Plaintiff's trustee, Wilmington, is a national banking association. As stated in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), a national banking association is a citizen of the state where the bank has its main office. Wilmington's main office is in Wilmington, Delaware. Accordingly, Plaintiff is a citizen of Delaware for purposes of federal diversity jurisdiction.

10. Borrowers are limited liability companies which, for diversity jurisdiction purposes, has the citizenship of their members. *See, e.g.*, *RL 900 Park*, 2021 WL 738705, *6 ("For purposes of diversity jurisdiction, an LLC is a citizen of all the states in which its members are citizens").

11. The members of both Borrowers are Nathan Rosenberg and Sarah Lebovits.

4

12. Mr. Rosenberg and Ms. Lebovits are citizens and residents of the state of New York, therefore Borrower's citizenship for federal diversity jurisdiction purposes is New York.

13. Guarantors are individuals and a citizens and residents of the state of New York.

14. Guarantors' citizenship for federal diversity jurisdiction purposes is New York.

15. There exists complete diversity between Plaintiff (Delaware citizenship) and both Defendants (New York citizenship).

16. Borrowers are indebted to Plaintiff pursuant to a commercial mortgage loan transaction, as described in more detail below. The outstanding balance on the loan exceeds $75,000.00. Accordingly, the amount in controversy is greater than the $75,000.00 threshold for diversity jurisdiction.

17. The action properly lies in the Southern District of New York as the property which is the subject of this action lies in this judicial district, and all or substantially all of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(a)(2). Further, the assignor of Plaintiff and the assignor of Borrowers consented to venue in this judicial district pursuant to the operative documents which are the subject of this suit. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

*The Loan Transaction*

18. Plaintiff is the owner and holder of that certain commercial mortgage loan (the "**Loan**"), evidenced in part by that certain Loan Agreement, dated as of December 21, 2018 (as amended, the "**Loan Agreement**"), executed by BAPAZ 2115 Mohegan LLC ("**Original Borrower**"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

19. The Loan is further evidenced by and Plaintiff is the owner and holder of that certain New York Consolidated, Amended and Restated Note – SBL, dated as of December 21, 2018, in the original principal amount of $3,014,000.00 (as amended, the "**Note**"), executed by Original Borrower. A true and correct copy of the Note is attached hereto as **Exhibit B**.

20. The indebtedness owed under the Note is secured by Borrowers' real property, and improvements thereon, with a street address of 2115 Mohegan Avenue, Bronx, New York 10460, as further set forth in the Consolidated Mortgage (as defined below) (the "**Property**").

21. Plaintiff is also the owner and holder of that certain Consolidation, Extension and Modification Agreement, dated as of December 21, 2018, and recorded on January 2, 2019 as CRFN 2019000000727 in the land records of Bronx County, State of New York (as amended, the "**Consolidation Agreement**"), pursuant to which certain mortgages were consolidated to form a single lien on the Property in the original principal amount of $3,014,000.00. A true and correct copy of the Consolidation Agreement is attached hereto as **Exhibit C**.

22. Borrower agreed in the Consolidation Agreement that the Mortgages were amended and restated in their entirety to the terms of the Consolidated Mortgage attached as Exhibit C to the Consolidation Agreement (as amended, the "**Consolidated Mortgage**").

23. Original Lender endorsed the Note to the order of Federal Home Loan Mortgage Corporation ("**Freddie Mac**"), assigned the Loan Agreement and other loan documents to Freddie Mac, and by instrument dated as of December 21, 2018, and recorded January 2, 2019 as CRFN 2019000000728 in the land records of Bronx County, State of New York, sold, assigned, and transferred all right, title, and interest of Original Lender in and to the Security Instrument and the other loan documents to Freddie Mac. A true and correct copy of the assignment to Freddie Mac is attached hereto as **Exhibit D**.

24. Freddie Mac endorsed the Note to the order of Lender, assigned the Loan Agreement and other loan documents to Lender, and by instrument dated as of April 22, 2019, and recorded April 24, 2019 as CRFN 2019000130850, in the land records of Bronx County, State of New York, sold, assigned, and transferred all right, title, and interest of Freddie Mac in and to the Security Instrument and the other loan documents to Lender. A true and correct copy of the assignment to Lender is attached hereto as **Exhibit E**.

25. On or about May 15, 2019, Original Borrower, Borrowers, and Lender entered into that certain Assumption Agreement – Small Balance Loan (the "**Assumption Agreement**"), pursuant to which Borrowers agreed to assume Original Borrower's rights, obligations and liabilities under the Loan and the Loan Documents (as defined below). A true and correct copy of the Assumption Agreement is attached hereto as **Exhibit F**.

26. Plaintiff is also the owner and holder of that certain Guaranty – Assumption – SBL, dated as of December 21, 2018, and executed by Guarantors (the "**Guaranty**"), under which Guarantor agreed to guarantee certain obligations and payments under the Note. A true and correct copy of the Guaranty is attached hereto as **Exhibit G**.

27. The Loan Agreement, the Note, the Consolidation Agreement, the Consolidated Mortgage, the Assumption Agreement, the Guaranty, and all other documents further evidencing, securing, or executed in connection with the Loan are referred to collectively herein as the "**Loan Documents**."

28. On or about May 18, 2020, Borrowers, Guarantors and Lender entered into that certain Forbearance Agreement – Securitized Loans, dated as of May 18, 2020 (the "**Forbearance Agreement**"). A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit H**.

29. Prior to the commencement of this action, Plaintiff has been in exclusive possession of the original Note and has not transferred same to any other person or entity.

*Borrowers' Defaults*

30. Under the terms of the Loan Documents, Borrowers are obligated to make monthly payments of principal and interest on the Loan (the "**Debt Service Payments**").

31. Borrowers have failed to make the monthly Debt Service Payments for the months of January 2021 and every month thereafter. Borrowers' failure to make Debt Service Payments as and when due under the Loan Documents constitutes an "Event of Default" thereunder.

32. By letter dated July 13, 2022, Plaintiff notified Borrowers of their default under the Loan Documents (the "**Default Letter**").  A true and correct copy of the Default Letter is attached hereto as **Exhibit I**.

33. Pursuant to Section 5(e) of the Note, where Borrowers continue to be in default, the entire unpaid principal amount, any accrued interest, and all other amounts due and payable under the Note and Loan Documents will immediately become due and payable at Plaintiff's option. Plaintiff hereby elects to accelerate all amounts due and payable under the Note and Loan Documents.

34. Borrowers remain in default under the Loan Documents.

*Amounts Due Under the Loan Documents*

35. As of June 7, 2022, the following amounts are due and owing to Plaintiff under the Loan Documents: (a) unpaid principal balance of $2,982,100.87; (b) interest, including default interest, accrued under the Note; (c) late fees in incurred; (d) tax advances paid by Lender for the protection of the Property; (e) prepayment consideration; and (f) any and all fees and costs incurred by Plaintiff, both to date and hereafter, in connection with the collection of the amounts due and

owing under the Loan Documents for the protection, preservation, and realization of the Property, including processing fees, late charges, inspection fees, environmental fees, appraisal fees, expenses, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of the third-party reports in connection with the Property.

### *Right to Possession and Rents*

36. Under Sections 3(b)(iii) and 3(c)(i) of the Consolidated Mortgage, upon an Event of Default, Plaintiff is entitled to immediate possession of the Property and may collect and make use the rents, profits, and income from the Property.

37. Further, the license granted to Borrowers for use of the rents was terminated due to the occurrence of an Event of Default under the Loan Documents.

38. Plaintiff is entitled to an order directing that all rents, issues, proceeds, revenues, profits, and income from the Property be remitted to Plaintiff in accordance with the terms of the Consolidated Mortgage, the Loan Agreement, the Note, and other Loan Documents, and directing that any such amounts be used to reduce the indebtedness described above.

### *Right to Foreclose*

39. Upon an Event of Default, Plaintiff has the right to institute a proceeding for foreclosure. Plaintiff is therefore entitled to an order directing that the Consolidated Mortgage be foreclosed finding that the liens arising under the Consolidated Mortgage be declared as first and prior liens on the Property, and ordering that Plaintiff be granted immediate possession of the Property.

40. No other action has been brought to recover any part of the debt under the Consolidated Mortgage, the Loan Agreement, the Note, or other Loan Documents.

41. Plaintiff may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of the commencement of this action of any and all of the defaults described herein.

42. Plaintiff specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver, or to seek other relief with respect to its rights under the Loan Documents. Plaintiff reserves the right to move this Court to enter final judgment against Borrowers or any other party liable for any residue of the debt under the Note remaining unsatisfied after the foreclosure sale of the Property is completed, including Guarantor.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff for foreclosure of the Property as follows:

A. Finding that Plaintiff has a first and best lien on the Property;

B. Ordering that Plaintiff has the legal right and is authorized to foreclose on the Property:

  i. In one or more parcels according to law together with the fixtures and articles of personalty upon the premises;

  ii. Subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

  iii. Subject to any state of facts that an accurate survey would show;

  iv. Subject to covenants and restrictions of record, if any; and

  v. Subject to violations if any, noted by any federal, state, city, town, or village agency having authority over the Property;

C. Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants herein;

D. Ordering that Plaintiff has the right to credit bid at such foreclosure sale any and all amounts owed by Borrower under the Note;

E. Ordering and directing that the Sheriff of Bronx County, New York, or any referee appointed in this action, foreclose the Property and deliver title via a Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

F. Ordering and directing that the proceeds of the sale be applied as follows:

   i. to payment of the expenses of the sale;

   ii. to the payment of the debt owed to Plaintiff under the Note and other Loan Documents;

   iii. to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

   iv. to the payment, at Plaintiff's option, of any real property taxes that may be due and unpaid in connection with the Property;

   v. to the payment, at Plaintiff's option, of all other assessments against or attributable to the Property;

   vi. the surplus, if any, to the payment of the debts secured by junior liens on the Property and then, to Borrowers, in accordance with further order of the Court;

G. Ordering that Borrowers have no right of redemption or reinstatement with respect to the Property;

H. Finding that Plaintiff has preserved its rights to pursue any deficiency that may exist under the Note or other Loan Documents after application of the proceeds of the

foreclosure sale and may move the Court to enter final judgment against Borrower or any guarantor for such deficiency; and

I. Ordering all other and further relief that the Court deems just, proper, and equitable.

Dated: New York, New York
July 19, 2022

        Respectfully submitted,

        POLSINELLI PC

        By: */s/ Morgan C. Fiander*
            Morgan C. Fiander
            600 Third Avenue, 42nd Floor
            New York, New York 10016
            (212) 413-2838
            mfiander@polsinelli.com

            Bradley R. Gardner
            900 W. 48th Place Suite 900
            Kansas City, MO 64112
            (816) 853-1000
            bgardner@polsinelli.com

        *Attorneys for Plaintiff*